UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jessica Kehren, Marie Knutson,
Ashley Brandeland-Gathje, and
Anna Emond,

                Plaintiffs,

v.

Olmsted Medical Center,

                Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 22-1560 ADM/JFD

_____

Gregory M. Erickson, Esq., and Vincent J. Fahnlander, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Ashley R. Thronson, Esq., and Marielos Cabrera, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On January 4, 2023, the undersigned United States District Judge heard oral argument on Defendant Olmsted Medical Center's ("OMC") Motion to Dismiss [Docket No. 26]. Plaintiffs Jessica Kehren, Marie Knutson, Ashley Brandeland-Gathje, and Anna Emond (collectively "Plaintiffs") are former employees of OMC and were discharged for refusing to become vaccinated against COVID-19. Each Plaintiff asserts claims for religious discrimination and failure to accommodate religious beliefs under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 303A.01 et seq. (Count 2), and for alleged violations of the Americans with

Disability Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count 3).[1] OMC moves to dismiss the MHRA and ADA claims. For the reasons set forth below, the Motion is granted, and Counts 2 and 3 of the Amended Complaint [Docket No. 19] are dismissed.

## II. BACKGROUND

OMC is a nonprofit health system that operates medical facilities in Minnesota. Am. Compl. ¶ 12. Plaintiffs were formerly employed by OMC and were responsible for in-person, direct patient care. Id. ¶¶ 8-11. Plaintiff Kehren worked for OMC as a registered nurse. Id. ¶ 8. Plaintiff Knutson worked as a registered nurse in OMC's anti-coagulation clinic. Id. ¶ 9. Plaintiff Brandeland-Gathje worked as a registered nurse in OMC's emergency department and in its trauma and general surgery unit. Id. ¶ 10. Plaintiff Emond worked for OMC as a radiologic technologist. Id. ¶ 11.

In September 2021, OMC adopted a policy requiring its employees to be vaccinated against COVID-19. Id. ¶ 15. The policy stated that employees would be suspended without pay or terminated from employment unless, by October 15, 2021, they: (1) submitted proof of completed vaccination; (2) had started the vaccination process; or (3) submitted a declination form declining the vaccine. Id. ¶¶ 15-16. The policy further provided that employees submitting a declination form would be required to undergo weekly testing for COVID-19 and to participate in mandatory education about COVID-19 and the vaccine. Id. ¶¶ 16-17.

The policy permitted employees to apply for a medical or religious exemption to the vaccine requirement. Id. ¶ 21. OMC created a religious exemption review team comprised of staff from human resources and others to review declinations based on religious reasons. Id.

---

[1] Plaintiffs also assert a claim of religious discrimination and failure to accommodate religious beliefs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count 1). OMC is not moving to dismiss this claim at the pleading stage.

¶ 23.  OMC also created a medical exemption team of OMC physicians to review each declination form for medical reasons.  Id. ¶ 25.  The policy stated that employees receiving a medical or religious exemption would still be required to complete mandatory education regarding COVID-19 and the vaccine, and to submit to weekly testing at OMC's COVID-19 testing site.  Id. ¶ 28.

Plaintiffs allege that as of October 15, 2021, "over half of those attempting to obtain a religious or medical exemption were pressured into taking the COVID-19 vaccine, and some chose to quit working for [OMC]."  Id. ¶ 30.  Approximately 10% of those who declined the vaccine were approved for religious or medical exemptions.  Id. ¶ 30.  Plaintiffs allege that "[t]he religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage, or highly paid employees with highly sought after skills who [OMC] could not afford to lose."  Id. ¶ 79.

In late October 2021, OMC allegedly began rejecting all requests for religious exemptions, claiming that granting any religious exemption would cause undue burden.  Id. ¶ 32.  Plaintiffs allege that the vaccine policy "evolved into strictly an unlawful 'vaccinate or be terminated' policy."  Id.

All Plaintiffs allege that they have sincerely held religious beliefs that prevent them from receiving the COVID-19 vaccine.  Id. ¶¶ 34, 38, 45, 48, 74, 88.  Specifically, each Plaintiff alleges that the COVID-19 vaccines were produced with or tested with cells from aborted human babies, and that receiving the vaccine would violate their religious beliefs against abortion.  Id. ¶¶ 34, 38, 45, 48. Plaintiff Brandeland-Gathje also believes that her body is a temple of the Holy Spirit and cannot allow penetration for testing, such as nasal swabs, for COVID-19 testing.  Id. ¶ 45.

All Plaintiffs requested a religious exemption to the COVID-19 vaccination requirement and were denied. Id. ¶¶ 33, 37, 42, 47. Plaintiff Brandeland-Gathje also requested an accommodation for COVID-19 testing and was denied. Id. ¶ 43. OMC did not provide Plaintiffs with the criteria it used in evaluating their requests for a religious exemption and did not provide specific information about the reasons for denying their requests. Id. ¶¶ 33, 37, 44, 47.

In November 2021, Plaintiffs were discharged from their employment with OMC because they had not been vaccinated against COVID-19 and had not received a religious or medical exemption. Id. ¶¶ 1, 53-56. Each Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and was issued a right to sue letter. Id. ¶¶ 53-56.

Plaintiffs filed this lawsuit on June 13, 2022. They assert claims against OMC for religious discrimination and failure to accommodate religious beliefs under Title VII (Count 1), religious discrimination and failure to accommodate religious beliefs under the MHRA (Count 2), and violations of the ADA (Count 3). Plaintiffs seek both money damages (including punitive damages) and restoration to their former positions at OMC.

OMC moves to dismiss Counts 2 and 3 under Federal Rule of Civil Procedure 12(b)(6). OMC also asks the Court to strike the Amended Complaint's references to punitive damages as insufficiently pled.

### III. DISCUSSION

**A. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most

4

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

When deciding a motion to dismiss, the Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011). Materials embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003).

A pleading must relate sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

**B. Religious Discrimination and Failure to Accommodate under the MHRA (Count 2)**

OMC argues Plaintiffs' MHRA claims must be dismissed because: 1) the Amended Complaint does not allege facts from which to draw a reasonable inference of religious discrimination; and 2) the MHRA does not require employers to provide reasonable accommodations for their employees' religious beliefs.

**1. No Religious Discrimination**

The MHRA makes it an unfair employment practice for an employer to discharge or otherwise discriminate against an employee because of the employee's religion. Minn. Stat. § 363A.08, subd. 2(2)-(3). A plaintiff may prove discriminatory intent by direct evidence or by using circumstantial evidence under the three-part burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hoover v. Norwest Priv. Mortg. Banking, 632 N.W.2d 534, 542 (Minn. 2001).

Under this framework, a plaintiff presents a prima facie case of discriminatory discharge by showing that they: "(1) are a member of a protected class; (2) were qualified for the position from which they were discharged; (3) were discharged; and (4) were replaced by a non-member of the protected class." Eilefson v. Park Nicollet Health Servs., No. A22-0189, 2022 WL 3149256, at *4 (Minn. Ct. App. Aug. 8, 2022) (citing Friend v. Gopher Co., 771 N.W.2d 33, 38 (Minn. Ct. App. 2009) (citing in turn Hoover, 632 N.W.2d at 542). The fourth element can also be met if "circumstances exist that give rise to an inference of discrimination." Id. at *4.

Here, Plaintiffs do not allege that they were replaced by non-members of their "protected class." Nor do Plaintiffs allege facts or circumstances that give rise to a plausible inference of religious discrimination. Indeed, Plaintiffs do not allege any facts to show that they were treated differently from other employees because of their religious beliefs. To the contrary, Plaintiffs

allege that they were discharged for failing to comply with an employment policy that applied to all employees. Specifically, the Amended Complaint alleges that OMC "implemented its Vaccine Mandate for all of its employees," Am. Compl. ¶ 15, and that OMC employees who failed to comply with the policy were discharged without regard to their reason for not complying. Id. ¶¶ 16-19. The Amended Complaint also alleges that OMC "terminated each of the Plaintiffs' employment based solely on Plaintiffs' refusal to take the Covid-19 vaccine." Id. ¶ 1. As such, Plaintiffs have failed to plausibly allege that they were discriminated against or treated differently because of their religion. See D'Cunha v. Northwell Health Sys., No. 1:22-CV-0988, 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (holding plaintiff failed to allege facts giving rise to an inference of religious discrimination where plaintiff alleged she was discharged "because [her employer] insisted that she take [the COVID] vaccine—not because of her religion") (quotation marks and alterations omitted) (emphasis in original).

**2. No Duty Under MHRA to Provide Religious Accommodation**

OMC next argues that to the extent Plaintiffs claim that OMC violated the MHRA by not accommodating their religious beliefs, such claim is not cognizable because, unlike Title VII, the MHRA does not impose an affirmative duty on employers to provide religious accommodations to its employees. The Court agrees.

A claim for failure to reasonably accommodate an employee's religion is distinct from a religious discrimination claim. Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1034 (8th Cir. 2008). While both Title VII and the MHRA prohibit religious discrimination in employment, only Title VII explicitly requires employers to provide religious accommodations to employees. See Stephen F. Befort, 17 Minn. Practice., Employment Law & Practice § 11:18 (4th ed. 2022) (stating that "[t]he principal difference between the rights and obligations of

7

employers and employees under these two laws is that Title VII also requires 'reasonable accommodation' based upon religion, while the MHRA does not," and that "Title VII is the more protective of the two statutes on this issue").

Title VII's religious accommodation requirement is incorporated in the statute's definition of "religion," which states that "'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 63 n.1 (1986) (quoting 42 U.S.C. § 2000e(j)). In contrast, the MHRA does not define religion and does not include any language requiring an employer to provide any religious accommodation.

The absence of such language is significant given that the MHRA includes a provision titled "Reasonable Accommodation" that explicitly addresses the circumstances requiring reasonable accommodation under the statute. See Minn. Stat. § 363A.08, subd. 6. The provision states that "it is an unfair employment practice for an employer . . . not to provide a reasonable accommodation for a job applicant or qualified employee with a disability unless . . . the accommodation would impose an undue hardship on the business." Minn. Stat. § 363A.08, subd. 6(a) (emphasis added). The Reasonable Accommodation provision includes at least six disability-related references, but does not once mention religion.

The lack of an express duty under the MHRA to provide for religious accommodation is additionally notable because the statute makes clear that discrimination and the failure to accommodate are two separate and distinct unlawful employment practices under the statute. Compare Minn. Stat. § 363A.08, subd. 2 (making it an unfair employment practice to

8

discriminate based on protected characteristics, such as disability) with Minn. Stat. § 363A.08, subd. 6 (making it an unfair employment practice not to provide a reasonable accommodation to an employee or applicant with a disability).  The legislature expressly listed religious discrimination as an unlawful employment practice in Minn. Stat. § 363A.08, subd. 2, but did not include the failure to provide religious accommodations as an unlawful employment practice in the Reasonable Accommodation provision of Minn. Stat. § 363A.08, subd. 6.  Had the legislature wanted to include religious accommodations in the Reasonable Accommodation provision, it could have done so.  Given the MHRA's explicit requirement to provide one type of accommodation (disability) but not the other (religion), the Court "cannot supply that which the legislature purposely omits or inadvertently overlooks."  Rohmiller v. Hart, 811 N.W.2d 585, 591 (Minn. 2012).

Resisting this conclusion, Plaintiffs argue that a duty under the MHRA to reasonably accommodate employees' religious beliefs was recognized in Benjamin v. Cnty. of Hennepin, No. C8-96-1122, 1996 WL 679690 (Minn. Ct. App. Nov. 26, 1996) and in Maroko v. Werner Enters., Inc., 778 F. Supp. 2d 993, 998 n.5 (D. Minn. 2011)).  However, neither case analyzed the language of the MHRA.  In Benjamin, the Minnesota Court of Appeals stated that "[r]eligious discrimination claims turn on whether an employer has 'reasonably accommodated' religious practices in the workplace," but cited only to federal Title VII cases to support its statement.  See Benjamin, 1996 WL 679690, at *3.  The court did not refer to any language in the MHRA or cite to any cases under Minnesota law for this proposition.  See generally id.  Indeed, there is no indication that the defendant in Benjamin contested the applicability of religious accommodation under the MHRA.

9

The Maroko case recognized that the language of the MHRA differs from Title VII in that the MHRA does not explicitly require an employer to provide religious accommodation. Maroko, 778 F. Supp. 2d at 998 n.5.  Despite this observation, no further analysis was conducted.  See id.  Neither case explains why an employer would be obligated to provide religious accommodation under the MHRA when the language of the statute does not require it.

Plaintiffs also argue that when interpreting cases under the MHRA, courts give weight to federal court interpretations of Title VII claims because the two statutes are similar.  This argument fails because Title VII and the MHRA are significantly different concerning the duty to provide religious accommodation.  Title VII expressly includes such a duty, whereas the MHRA is silent on the topic.  As the Minnesota Supreme Court recently observed, "interpretations of federal anti-discrimination statutes [are] useful to guide our interpretation of the Minnesota Human Rights Act when the . . . provisions in question are similar to provisions of the federal statutes.  When provisions of the Minnesota act are not similar to provisions of federal anti-discrimination statutes, however, we have departed from the federal rule in our interpretation of the Minnesota act."  McBee v. Team Indus., Inc., 925 N.W.2d 222, 228 (Minn. 2019) (internal quotation marks, citations, and alterations omitted).  Because the MHRA does not obligate employers to provide religious accommodations, Plaintiffs' state law claims for failure to accommodate their religious beliefs are not cognizable.

Count 2 is dismissed for failure to state a claim under the MHRA.

## C.  Americans with Disabilities Act (Count 3)

In Count 3, Plaintiffs allege disability discrimination and violations of the ADA's prohibition against disability-related inquiries and medical exams.

**1. No Disability Discrimination**

The ADA prohibits a covered employer from discriminating against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "'Discrimination' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a claim for discrimination under the ADA, a plaintiff must plausibly allege that she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability." Id.

Here, Plaintiffs cannot satisfy the first element because they have failed to allege any facts to plausibly show they are disabled within the meaning of the ADA. "The ADA defines a disabled person as an individual with a physical or mental impairment that substantially limits one or more of that person's major life activities, an individual who has a record of such an impairment, or an individual who is regarded as having such an impairment." Scheffler v. Dohman, 785 F.3d 1260, 1261 (8th Cir. 2015) (citing 42 U.S.C. § 12102(1)). The Amended Complaint includes no allegations about Plaintiffs' health at all, much less allegations that any Plaintiff has or is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

Even if Plaintiffs had plausibly alleged that they are disabled within the meaning of the ADA, their disability discrimination claims would still fail because no Plaintiff alleges that they sought and were denied an accommodation based on disability. Plaintiffs allege only that they requested and were denied a religious accommodation. A defendant "cannot be faulted for

11

failing to accommodate a disability of which it was not aware." Hustvet v. Allina Health Sys., 910 F.3d 399, 411 (8th Cir. 2018).

### 2. No Unlawful Medical Examination or Inquiry

The ADA prohibits an employer from requiring a medical examination or inquiring about an employee's disability status "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "This provision applies to all employees, regardless of whether the employee has an actual disability." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

A "medical examination" is defined by the EEOC as "a procedure or test that seeks information about an individual's physical or mental impairments or health." Bates v. Dura Auto. Sys., Inc., 767 F.3d 566, 574 (6th Cir. 2014) (quoting EEOC Enforcement Guidance). A disability-related inquiry is "a question (or series of questions) that is likely to elicit information about a disability," such as asking an employee whether he or she has a disability, asking for medical documentation about a disability, or asking broad questions about the employee's impairments that are likely to elicit information about a disability. EEOC, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA (July 27, 2000), https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#4.

To the extent that Plaintiffs allege the vaccine requirement violated § 12112(d)(4)(A), the allegation fails to state a claim because a vaccine is not a procedure that seeks information about Plaintiffs' health and is not an inquiry into whether Plaintiffs have a disability. See Passarella v. Aspirus, Inc., No. 22-CV-287, 2023 WL 2455681, at *7 (W.D. Wis. Mar. 10, 2023) (holding that a "vaccine mandate does not 'seek information' about plaintiffs' health, so it cannot violate

subsection 12112(d)"). As such, a vaccine is not a prohibited medical examination or disability-related inquiry under § 12112(d)(4)(A).

Regarding the vaccine policy's requirement that employees report their vaccination status to OMC, this requirement is not an unlawful inquiry under the ADA because inquiring about an employee's vaccination status is not likely to elicit information about a disability. Sharikov v. Philips Med. Sys. MR, Inc., No. 122CV00326, 2023 WL 2390360, at *15 (N.D.N.Y. Mar. 7, 2023); EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws ¶ K.9. (July 12, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

As to the vaccine policy's requirement that employees who had not been vaccinated would be tested weekly for COVID-19, none of the Plaintiffs allege that they personally underwent any COVID-19 testing. Even if Plaintiffs had alleged that they were subjected to COVID testing, such testing does not amount to an unlawful medical examination. "[B]eing infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment. Therefore, a COVID-19 test is not 'likely to reveal a disability.'" McCone v. Exela Techs., Inc., No. 6:21-CV-912, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022) (footnote omitted); accord Sharikov, 2023 WL 2390360, at *15 (holding vaccine attestation and COVID-19 testing are not disability-related inquiries or medical examinations). Accordingly, Plaintiffs have failed to plausibly allege an unlawful medical examination or disability-related inquiry under the ADA.

Count 3 is dismissed for failure to plausibly allege claims for disability discrimination or violations of the ADA.

**D. Punitive Damages**

OMC argues that the references to punitive damages in the Amended Complaint must be stricken because Plaintiffs' allegations do not meet the standards for entitlement to punitive damages. To be entitled to punitive damages under Title VII (Plaintiffs' only remaining claim), Plaintiffs must allege facts to plausibly show that OMC intentionally discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Shukh v. Seagate Tech., LLC, 873 F. Supp. 2d 1087, 1090 (D. Minn. 2012) (quoting 42 U.S.C. § 1981a(b)(1); Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529–30 (1999)).

Plaintiffs argue that OMC deliberately disregarded their religious rights when it imposed the vaccine policy. At this early stage in the litigation, the Court declines to strike the Amended Complaint's reference to punitive damages. OMC's request to strike the punitive damages reference is denied without prejudice to renewing the request at a later stage in the proceedings.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Olmsted Medical Center's Motion to Dismiss [Docket No. 26] is **GRANTED**; and

2. Counts 2 and 3 of the Amended Complaint are **DISMISSED with prejudice**.

BY THE COURT:

Dated: April 4, 2023

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT